**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

BOARD OF COUNTY COMMISSIONERS
OF GRANT COUNTY, NEW MEXICO and
GRANT COUNTY, NEW MEXICO,

      Plaintiffs,

      vs.                                                                                No. CIV 98-1354 JC/LCS

US WEST COMMUNICATIONS, INC.,
a Colorado Corporation,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Plaintiffs' Motion for Summary Judgment, filed November 22, 1999 *(Doc. 43)*, and Defendant's Motion for Summary Judgment, filed December 14, 1999 *(Doc. 47)*. After reviewing the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities, the Court finds that certain sections of Grant County's franchise ordinances are preempted by the Federal Telecommunications Act. However, to the extent that the preempted sections are severable, the Court holds that Defendant US WEST must comply with the remaining provisions. Plaintiffs may amend or modify the ordinances in accord with this opinion. Plaintiffs' claim for civil trespass is denied as moot.

**I.**     **Background**

US WEST Communications, Inc. ("US WEST"), is a corporation authorized to do business as a telecommunications provider within Grant County, New Mexico, and other parts of the state. In order to provide service, US WEST constructs and maintains telecommunications equipment within the public rights-of-way. The Board of County Commissioners of Grant County, New Mexico and Grant County, New Mexico (collectively, "Grant County"), have enacted various ordinances

which require a franchise or license application, negotiations and review in order for a telecommunications provider to establish service in their area.

NMSA 1978, § 62-1-3 (1987) authorizes Grant County to grant franchises to telecommunications providers and to impose charges for the County's reasonable actual expenses incurred in the granting of any franchise. Accordingly, in the Spring of 1997, Grant County placed in effect Ordinance No. 97-03-27-B entitled, "An Ordinance Requiring a Franchise or License Agreement for Use of the Public Rights of Way of Business Entities providing Services for Profit and Requiring Payment for Costs Incurred by the County of Grant, New Mexico, for Franchise or Licence Application, Negotiations and Review."

Pursuant to the ordinance, all businesses which intend to use Grant County streets, roads or rights-of-way are required to apply for a franchise or license agreement and pay the reasonable expenses incurred in the granting of a franchise. The Application Form requires applicants to provide extensive information regarding everything from names, numbers, affiliations and stock holdings of officers and directors, to agreements with other utilities, and financial statements.[1] *See* Application for Grant County Utility, Telecommunication or Cable Franchise at 5, 9, 17. For any entity or person which does not comply with the terms of the ordinance, Ord. No. 97-03-27-B § 14 provides for the imposition of civil and criminal penalties, in amounts up to $50,000 per violation per day. *See* Grant County Ord. No. 97-03-27-B § 14.

In March of 1997, pursuant to the authority of Ord. No. 97-03-27-B, Grant County passed Proposed Ordinance No. 97-03-27-C, "An Ordinance Granting Certain Rights and Privileges to the U.S. WEST Communications Group, its Subsidiaries, Successors and Assignees."

---

[1] Along with an application, applicants are required to submit $2500 to cover the costs of processing the franchise agreement. *See* County Ord. No. 97-03-27-B § 4. In addition, if the costs of processing the application exceed the application review fee, a successful applicant must reimburse the county for the additional costs. *See id.* at § 5. Together, these monies form the "Application Fee." The Application Fee is not in controversy in this lawsuit.

In addition to the requirements of the franchise application ordinance, the proposed ordinance mandated that US WEST pay Grant County five percent (5%) of its gross revenue in semi-annual installments as a "rights-of-way management fee." *See* Grant County Proposed Ordinance No. 97-03-27-C, § 7. The rights-of-way management fee (User Fee) is in addition to the application fee set forth in Ord. No. 97-03-27-B, § 4. Although not stated in the ordinance, the User Fee is based on four components, 1) to reimburse the County for its costs in managing the rights-of-way, 2) the value of the County's real property, 3) the value of in kind telecommunications services that a telecommunications company might provide directly to the County, and 4) the nature and quality of the services provided by a telecommunications company to the general public within the County. *See* Dep. of Patricia E. Kingsley at 235-236. US WEST objected to the User Fee and Proposed Ord. No. 97-03-27-C was not enacted.

Grant County proposed the same User Fee to Western New Mexico Telephone, eventually entering into an agreement in which the User Fee was based on 5% of the company's gross local monthly recurring revenue. *See* Grant County Ord. No. 97-11-13. After entering into a franchise agreement with Western New Mexico Telephone, Grant County asserted that it could not offer "more favorable terms" to US WEST than it had done with Western New Mexico Telephone and, therefore, any future franchise negotiations with US WEST would include a User Fee based on gross local monthly recurring revenue.

Finally, in the fall of 1998, Grant County passed Ordinance No. 98-11-12 entitled, "An Ordinance of Grant County, New Mexico, Setting Forth Conditions Accompanying Grants of Authority for Franchises and Licenses and Regulations for the Occupancy, Use, and Civil Trespass of County Rights-of Way." Essentially, Ord. No. 98-11-12 sets forth additional conditions and informational requirements for rights-of-way franchise agreements granted under

Ord. No. 97-03-27-B. In addition to the abundance of information required of franchisees, Ord. No. 98-11-12 requires users to pay a "fair and reasonable amount annually" as monetary compensation for "the management of County Public rights-of-way." Ord. No. 98-11-12, § 6. This amount refers to the User Fee that was sought in proposed Ord. No. 97-10-27-C, to which US WEST objected.

Pursuant to the Ordinances, Grant County has requested that US WEST apply for a franchise by paying the applicable franchise fee and providing the requested information. Plaintiffs seek a declaratory judgment regarding the validity of the ordinances in question. In addition, Plaintiffs request injunctive relief requiring US WEST to comply with its franchise Ordinances. Plaintiff also seeks monetary damages for civil trespass against US WEST, for the use of public rights-of-way without a valid franchise agreement.

Defendant US WEST has filed a counterclaim alleging that the User Fee, the extensive informational requirements and the excessive sanctions of the Ordinances violate the Federal Telecommunications Act of 1996. US WEST also contends that the ordinances impermissibly encroach on the Public Regulation Commission's plenary regulatory authority as granted by Article XI of the New Mexico Constitution. Finally, US WEST argues that the Ordinances seek to impermissibly regulate telecommunications providers in a manner beyond the authority bestowed to Grant County by the state and in violation of other state statutes.

**II.     Analysis**

    **A.     Standard**

Presently before the Court are the parties' cross motions for summary judgment. As the parties do not disagree about any material facts, the outcome depends upon pure questions of law.

*See* US WEST's Reply Brief in Support of its Mot. for Summ. J. and Resp. to Pls.' Mot. for Summ. J. at 3, filed January 7, 2000.  Therefore, judgment on the pleadings is appropriate.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986).  Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [their] pleading[s], but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

When applying the summary judgment standard, "[t]he evidence must be viewed in the light most favorable to the nonmoving party." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir. 1995).  "Summary judgment is only appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  Thus, to defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86(1986).

**B.     Preemption Under the Federal Telecommunications Act**

It is a "familiar and well established" principle that the Supremacy Clause, U.S. Const. art. VI, cl. 2, invalidates all state and local laws that "interfere with, or are contrary to" federal law.  *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (citations omitted); *see also Cipollone v. Ligget Group, Inc.*, 505 U.S. 504, 515 (1992) (citations omitted) (state law that conflicts with federal law is "without effect").  Local laws may be invalidated under the Supremacy

Clause in several ways. *See Hillsborough County* at 713. Relevant to this motion, a local law is nullified to the extent that it actually conflicts with federal law by standing as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *See id.*

Congress passed the Federal Telecommunications Act of 1996[2] (FTA) in order "to end the monopolies in local telephone services and to benefit consumers by fostering competition between telephone companies in cities throughout the United States." *AT & T Communications, Inc. v. City of Dallas*, 8 F. Supp.2d 582, 585 (N.D. Tex. 1998). To carry out this goal, Congress adopted sweeping restrictions on the authority of state and local governments to limit the ability of telecommunications companies to do business in local markets. *See id.* at 591 ("Congress's intent was to remove all barriers to entry in the provision of telecommunications services by preempting all state and local legal requirements that directly or indirectly prohibit market entry").

The provision of the FTA at issue here, entitled "Removal of barriers to entry," provides in relevant part:

> a) In General: No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.
>
> b) State regulatory authority: Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services and the rights of consumers.
>
> c) State and local government authority: Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or require fair and reasonable compensation from telecommunications providers, on a competitively neutral and non-discriminatory basis, for use of public rights-of-way on a non-discriminatory basis, if the compensation required is publicly disclosed by such government.

---

[2] Pub.L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. § 151 *et seq.* (Supp.1998)).

47 U.S.C. § 253.  Thus, section 253 preempts all state and local regulations that "prohibit or have the effect of prohibiting" any company's ability to provide telecommunications services.  *See id.* at 253(a).  However, state and local authority is not precluded where such regulations fall within either of the statute's two "safe harbor" provisions.  First, § 253(b) permits states to adopt "competitively neutral" regulations "necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services and safeguard the rights of consumers."  47 U.S.C. § 253(b).  Second, § 253(c) permits states to "manage the public rights-of-way or to require fair and reasonable compensation" for the "use" thereof.  47 U.S.C. § 253(c).  Thus, "while states may regulate universal service, protect consumers, ensure quality and protect the public safety and welfare, local governments can only manage the public rights of way, unless a state has specifically delegated the state authority to its local governments."  *BellSouth Telecomms., Inc. v. City of Coral Springs,* 42 F. Supp.2d 1304, 1307 (S.D. Fla. 1999); *AT & T v. Dallas*, 8 F. Supp.2d at 591.

        **1.**      **Do the Ordinances prohibit or have the effect of prohibiting entry?**

In determining whether the Grant County ordinances are preempted by federal law, the Court must first examine whether the Ordinances "prohibit or have the effect of prohibiting" entry into the County's telecommunications market under § 253(a) of the FTA.  In *Bell Atlantic-Maryland, Inc. v. Prince George's County*, the district court found that while requirements similar to those at issue here individually may or may not "have the effect of prohibiting" service, in combination, they created a substantial and unlawful barrier to entry into the County's telecommunications market.  *See Bell Atlantic-Maryland, Inc. v. Prince George's County*, 49 F. Supp.2d 802, 815 (D.Md. 1999) *vacated*,

2000 WL 620283 (4th Cir. May 15, 2000).³  Grant County is quick to distinguish the Ordinances in this case from those in *Bell Atlantic*.  Cited as their most "compelling evidence," Grant County points out that another New Mexico telecommunications company, Western New Mexico Telephone Company ("Western"), entered into a franchise agreement with Grant County pursuant to the Ordinances at issue.  Pls.' Mem. in Support of Mot. at 8.  Therefore, Grant County argues that the Ordinances in this case do not "prohibit"entry.  *See id.*  However, the FTA "preempts local regulations that not only "prohibit" outright the ability of any entity to provide telecommunications services, but also those that "*may . . .* have the effect of prohibiting" the provision of such services. *Bell Atlantic-Maryland, Inc. v. Prince George's County*, 49 F. Supp.2d at 814 (emphasis added). Any "process for entry" that "imposes burdensome requirements on telecommunications companies and vests significant discretion in local governmental decision makers to grant or deny permission to use the public rights-of-way 'may have the effect of prohibiting' the provision of services under the FTA." *Id.*  Therefore, a violation of 253(a) may occur even if some providers are able to enter the market.  If an ordinance is found to be preempted, "it makes no difference that other providers have agreed to the preempted ordinance."  *AT & T v. Dallas*, 8 F. Supp.2d at 593.  *See also RT*

---

³ It is well-settled law that a federal court should not decide questions of constitutionality unless such are unavoidable or are absolutely necessary to a decision of the case.  *See, e.g., Rosenberg v. Fleuti*, 374 U.S. 449, 451, 83 S. Ct. 1804, 1806, 10 L. Ed.2d 1000 (1963).  Although the Fourth Circuit Court of Appeals recently vacated the opinion of the district court in *Bell Atlantic*, remanding the case for consideration of the state law claims, the district court's consideration of the evidence under the FTA remains well-reasoned and compelling.

In this case, any analysis of Plaintiffs' state claims would necessarily involve an examination of the constitutionality of the Ordinances under the New Mexico state constitution.  Therefore, the Court finds that the better and more widely followed course is to address the federal constitutional issues first, limiting the analysis of the state constitutional issues to that which is necessary to decide whether the ordinances are preempted by the Federal Telecommunications Act.  *See, e.g,, Peco Energy Co. v. Township of Haverford*, 1999 WL 1240941 at *20 (E.D. Pa. Dec. 20, 1999) (addressing FTA preemption issue first, thus negating necessity for examination of Pennsylvania state law), *AT & T Communications, Inc. v. City of Dallas*, 8 F. Supp. 2d 582 (N.D. Tex. 1998) (considering scope of city's authority under the FTA and the Texas Public Utilities Regulatory Act concurrently)*, AT & T Communications, Inc. v. City of Austin*, 975 F. Supp. 928, 935 (W.D. Tex. 1997) (*City of Austin* 1) ("State law claim is germane to the issue of federal preemption and will be discussed more fully *infra*").

*Communications, Inc. v. FCC*, 201 F.3d 1264, 1268 (10th Cir. 2000) (finding that the FTA does not require that a bar to entry be insurmountable before the FCC preempts it).

It is likewise irrelevant that US WEST has entered into similar franchise agreements in other markets. An Ordinance may be preempted under § 253(a) of the FTA solely on the basis of its prohibitory *effect*, which may result from a burdensome process of entry and significant discretion left to the local governmental decision makers, despite a company's actual ability to comply with the franchise agreement. *See Bell Atlantic*, 49 F. Supp.2d at 814.

After review of their various provisions, I find that the Ordinances have the effect of prohibiting the provision of telecommunications services in Grant County. First, the Ordinances prohibit the use of any Grant County right-of-way without a "franchise" from the County. *See* NMSA 1978 §62-1-3 (1987); County Ord. No. 97-03-27-B. Second, in order to obtain a franchise, companies must submit to a lengthy and detailed application form, along with an application fee of $2500. *See* Ord. No. 97-03-27-B. If such procedures are not complied with, sanctions are authorized in amounts up to $50,000 a day. *See* Ord. No. 97-03-27-B §14, Ord. No. 98-11-12 § 29(6). Third, the Ordinances lack procedural guidelines or criteria by which a franchise request must be evaluated, thus, significant discretion lies with the grantor. Finally, once a franchise has been granted, the franchisee is required to file regular financial reports and any other information requested by the County and pay a User Fee of 5 % of its annual gross revenues. *See* County Ord. No. 97-03-27-C, County Ord. No. 98-11-12 § 6. Taken as a whole, these requirements create a "substantial and unlawful barrier to entry into the [Grant] County telecommunications market." *Bell Atlantic* at 815. *But see TCG v. City of Dearborn*, 206 F.3d 618, 625 (6th Cir. 2000) (the requirement of a fair and reasonable franchise fee is not by itself prohibitory under the FTA).

### 2. Do the Ordinances nonetheless fall within the safe harbor provision of 253(c)?

Having determined that Grant County's telecommunications franchise ordinances violate section 253(a) of the FTA, the next question is whether the ordinances nonetheless fall within the "safe harbor" provision of section 253(c). Grant County alleges that the Ordinances seek merely to manage the public rights-of-way, and that the User Fee demanded of US WEST is fair and reasonable compensation for the use of the public rights-of-way. However, I find that the Ordinances exceed the County's authority under § 253(c).

*Authority to manage the public rights-of-way*

Section 253(c) of the FTA preserves the authority of State and local governments to manage public rights-of-way. As described by the federal Communications Commission (FCC), the types of activities that fall within the sphere of appropriate rights-of-way management include coordination of construction schedules, determination of insurance, bonding and indemnity requirements, establishment and enforcement of codes, and keeping track of various systems using the rights-of-way in order to prevent interference amongst them. *See AT & T v. Dallas,* 8 F. Supp.2d 582, 591-92 (quoting *In the Matter of TCI Cablevision of Oakland County, Inc.*, 12 F.C.C.R 21396, at ¶ 103 (F.C.C. 1997)). *See also*, *In Re Classic Telephone, Inc.*, 11 F.C.C.R 13082 (F.C.C. 1996) (describing in more detail examples of activities permitted under section 253(c)). Thus, the County is permitted under the FTA to require telecommunications companies to obtain a franchise in order to use the County rights-of-way, however, the terms of the franchise must be limited to the types of activities described by the FCC and *TCI Cablevision*. *See Bell Atlantic*, 49 F. Supp.2d at 816.

The Ordinances at issue in this case require an extensive amount of information which does not relate to the County's management of the public rights-of-way. Grant County argues that the information is used to evaluate the potential franchisee's ability to "provide the services required

under its ordinances." Pls.' Reply to Def.'s Mot. at 8. However, such an inquiry does not relate to the County's interest in management of the public rights-of-way as defined by the FCC in *TCI Communications*. For example, Ord. No. 98-11-12 requires franchisees to provide information regarding customer complaints, financial records and management and bookkeeping reports. *See* County Ord. No. 98-11-12 §18,19. However, this information does not relate to the physical management of equipment, services and systems on rights-of-way. Also, the Ordinances do not describe the method for approving a franchise agreement, yet specify that if the application requirements are not met, sanctions and penalties will ensue. *See* County Ord. No. 97-03-27-B § 14. Thus, a franchise applicant is at the mercy of the County, ignorant of the actual criteria used in "determining the suitability of an applicant" other than the County's evaluation of the company's ability to "provide services required under its ordinance." Finally, there is nothing in the Ordinances that limits the discretion of the County to matters involving the physical use and occupation of the rights-of-way. *See Peco Energy Co. v. Township of Haverford*, 1999 WL 1240941 at *20 (E.D. Pa. Dec. 20, 1999). Such broad regulation exceeds the authority of the County under § 253(c).

*Authority to require a fair and reasonable compensation*

Under Section 253(c), a state or local government may also require "fair and reasonable compensation" from telecommunications providers for use of public rights-of-way. This fee must be directly related to the company's use of the right-of-way. *See, e.g., Bell Atlantic-Maryland, Inc. v. Prince George's County*, 49 F. Supp.2d at 817, *Peco Energy Co.* at *20. Grant County alleges that the proposed Ordinance merely requires fair and reasonable compensation for the use of the public rights-of-way. *See* Pls.' Reply at 11.

Although the parties disagree over the meaning of the term "compensation," they do not dispute that the User Fee must be related to the franchisee's actual physical use of the County's public

-11-

rights-of-way, as opposed to metaphysical use such as the transmission of light waves or electrons. *See Bell Atlantic*, 49 F. Supp.2d 805, 818, 820; *City of Austin* 1, 975 F. Supp. 928; *AT & T Communications, Inc. v. City of Austin*, 40 F. Supp 2d 852, 853 (W.D. Tex. 1998) (*City of Austin* 2). Based on this requirement, some cases have held that revenue based User Fees are by definition invalid, as they are unrelated to actual use. *See, e.g., Peco Energy Co.* at *24; *Bell Atlantic*, 49 F. Supp.2d at 818 (holding a fee based on a percentage of gross revenue is not related to "use" of rights-of-way); *AT & T v. City of Dallas*, 8 F. Supp.2d at 593 (holding costs must be apportioned according to the company's degree of use, not its overall level of profitability); *but see TCG v. City of Dearborn*, 206 F.3d 618 (6th Cir. 2000) (finding a revenue based fee fair and reasonable compensation where the company had agreed to such compensation prior to the passage of the FTA), *c.f. City of Dallas v. Metropolitan Fiber Sys.*, 2000 WL 198104 (N.D. Tex. Feb.17, 2000) (holding FTA does not preempt ordinances enacted before the FTA where companies were already in the telephone market and providing their services). Nevertheless, the Court need not determine whether revenue based fees are *per se* invalid, because I find that in this case, Grant County's User Fee does not constitute a fair and reasonable compensation for US WEST's use of the public rights-of-way.

Here, Grant County presumably bases the User Fee on the four factors previously described in Part I, *supra*. However, these factors are not enumerated in any of the Ordinances themselves, nor do the Ordinances specify how these factors will be evaluated. Rather, Proposed County Ord. No. 97-03-27-C § 7 requires that US WEST pay a pre-determined percentage of its gross revenue to the County. Moreover, only the first factor, and perhaps the second, relate to the actual physical use of the public rights-of-way. Neither of these factors sufficiently support the imposition of a User Fee as high as 5% of gross local revenue, as the County fails to provide any evidence that directly relates the amount of the User Fee to its expenses in managing the rights-of-way.

Furthermore, Grant County states that the User Fee is "in consideration for" the grant of authority to construct, place and operate telecommunications service in Grant County. Proposed Ord. No. 97-03-27-C § 7. However, the FTA was created to prohibit the imposition of a User Fee in exchange for the mere right to provide telecommunication services to a particular market. For these reasons, I find that the User Fee is not fair and reasonable compensation and therefore is not subject to the safe harbor protections of section 253(c) of the FTA.

### 3. Do the Ordinances nonetheless fall within the safe harbor provision of 253(b)?

A State's authority to regulate under a federal statute necessarily includes the authority to delegate local regulation, including regulation for public health, safety and welfare purposes to local authorities. *See City of Austin* 1, 975 F. Supp. 928, 939. Thus, the next step in the analysis is to determine whether the state of New Mexico has granted Grant County the authority to impose requirements necessary to "protect the public safety and welfare." 47 U.S.C. § 253(b).

Pursuant to NMSA 1978, § 4-37-1, counties have "the same powers that are granted municipalities." The grant of power to counties in the State of New Mexico includes powers "necessary and proper to provide for the safety [and] preserve the health . . . of any county and its inhabitants." *Id.* Thus, it would appear that Grant County has the authority to create regulations which are otherwise barred by the Federal Telecommunications Act under the guise of protecting its inhabitants' health and safety. However, a county's powers are limited to those powers which are not "inconsistent with statutory or constitutional limitations placed on counties." NMSA 1978, § 4-37-1.

Under the New Mexico Constitution, "the public regulation commission [PRC] shall have responsibility for chartering and regulating business corporations in such manner as the legislature shall provide." *See* NM Const. Art. XI, §2. The authority of the New Mexico Public Regulations Commission includes regulatory power over telecommunications service providers. *See id.*

Therefore, US WEST argues that by vesting the PRC with administrative, regulatory, and enforcement authority over telephone, telegraph and information transmission companies, the state has preempted local regulation in that area. Accordingly, US WEST asserts that the State has retained the power to regulate telecommunications services and has not delegated any authority under § 253(b) to Grant County.

In this case, however, it is not necessary to decide whether the authority of the PRC preempts Grant County's ability to impose requirements necessary to protect the public safety and welfare of its citizens. Even if Grant County has been delegated such authority, I find that Grant County has exceeded such power in the challenged Ordinances. County Ord. No. 98-11-12 sets forth extensive requirements for franchisees. Some requirements are understandably in the public interest; for example, the requirement that franchisees inform the County of when and where construction will take place and the requirement that the franchisee obtain insurance and indemnify the County from liability. *See* County Ord. No. 98-11-12 at § 13, 15. Conversely, the extensive reporting requirements set forth in § 19 neglect to establish how such requirements serve to protect public safety and welfare and fail to describe guidelines for evaluating the information that is provided. *See* Ord. No. 98-11-12 at § 19.

Grant County claims the power to regulate, then concludes that under such power, it is "within its rights to request information regarding customer service and complaint policies, continued service requirements, financial reports, state regulatory proceedings, outages, etc." *See* Pls.' Mot. at 11.[4] However, it is insufficient for Grant County to regulate in the name of protecting public safety and welfare without identifying any public interest it seeks to protect. The Ordinances fail to indicate

---

[4] *See, e.g.,* Ordinance 98-12-11, § 3 ("the requirements provided in this ordinance are hereby declared to be for public purpose to promote the health safety and convenience of the general public . . .").

and the Court will not speculate as to the public interest the County seeks to protect through the imposition of an unreasonably high User Fee, the imposition of significant monetary sanctions, and burdensome requests for information unrelated to safety and welfare concerns.[5]  Therefore, because the Ordinances fail to adequately identify how such requirements serve to protect public safety and welfare, the Ordinances may not seek safe harbor from the FTA under §253(b).

**C.    Severability**

Each of Grant County's franchise Ordinances contain an express severability clause.  Pursuant to the severability clauses, "if any section, subsection, sentence, clause or phrase of this ordinance is for any reason illegal, invalid or unconstitutional by the decision of any court or regulatory body of competent jurisdiction, such decision shall not affect the validity of the remaining portions hereof." *See* 98-12-11 § 12.  *See also* Ordinance 97-03-27 B at § 27, Ordinance 97-03-27 C §14.  Therefore, if the preempted sections are severable, the remaining portions retain their enforceability.

*User Fee*

Authorization for the imposition of a User Fee is granted to local governments through § 253(c) of the FTA and is reiterated in County Ord. No. 98-11-12 §6.  However, as applied in § 7 of County Ord. 97-3-27-C, the User Fee is invalid.  Therefore, 97-3-27-C § 7 is preempted by the FTA.  Likewise, 97-3-27-C § 8 is preempted to the extent that it seeks review of a franchisee's revenues for the purpose of calculating the User Fee.  The Court finds that §§ 7 and 8 are severable.  Accordingly, Grant County Ordinance 97-3-27-C may be omitted or amended to reflect a User Fee which seeks fair and reasonable compensation for the use of the public rights-of-way.

---

[5] Although Plaintiffs argue that the information is necessary to assist in determining the amount of the User Fee and in determining whether the franchisee is sufficiently able to provide and maintain service to its residents, *see* Pls.' Mot. for Summ. J. at 11-12, such *ex post facto* reasoning is insufficient to justify Grant County's imposition of an excessive User Fee, numerous informational requirements and substantial sanctions

*Application Form*

The Application for Grant County Utility, Telecommunications and Cable Franchise Form seeks information beyond the scope of Grant County's authority.  Given the number and variety of provisions which are preempted by the FTA, the Court does not believe that attempting to sever the invalid from the valid provisions is appropriate.  Therefore, I find that the entire application form is invalid.  A new application form may be re-written in conformity with the opinion of this Court.

*Sanctions*

County Ord.  No.  97-3-27-B  § 14 allows for the imposition of sanctions in amounts up to $50,000 per offense for failure to comply with the application procedures.  Such fines do not serve to protect the public safety or welfare and therefore are preempted by the FTA.  The section stands on its own and is easily severable from the remaining portions of County Ord.  No.  97-3-27-B.

*Reporting Requirements*

County Ord.  No. 98-11-12 § 19 requires extensive reporting of franchisee information and business practices without establishing how such requirements serve to protect public safety and welfare.  Neither does the section purport to aid in the management of the public-rights-of way.  However, the entire section is severable from the remaining portions of the Ordinance.  Accordingly, County Ord.  No. 98-11-12 § 19 may be omitted or amended in accordance with this opinion without affecting the validity of the remaining sections of the Ordinance.

**III.**     **Conclusion**

Although Grant County has the power to require that telecommunications providers apply for and be granted a franchise, that power does not extend to the imposition of excessive User Fees, informational requests and sanctions.  The disputed portions of County Ordinances Nos. 98-11-12, 97-3-27-B and 97-3-27-C are not entitled to safe harbor protection under § 253(b) or (c) and are

therefore preempted by the Federal Telecommunications Act. However, the preempted sections may be removed from the Ordinances without affecting the enforceability of the remaining portions of the Ordinances. The Application form is invalid in its entirety. Because the Court is granting US WEST's motion for summary judgment on FTA grounds, it need not consider its claims under state and constitutional law.

Wherefore,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment, filed November 22, 1999 *(Doc. 43)*, and Defendant's Motion for Summary Judgment, filed December 14, 1999 *(Doc. 47)* are well taken in part and will be **granted in part** as follows:

1) County Ord. No. 97-3-27-C § 7-8; County Ord. No. 97-3-27-B § 14 , County Ord. No. 98-11-12 § 19, and the Application Form are preempted by the Federal Telecommunications Act.

2) The preempted sections are severable and therefore, Defendant US WEST must comply with the remaining valid provisions of the enacted Ordinances.

3) Plaintiffs' claim for civil trespass is **denied as moot.**

4) Plaintiffs' requests for attorney fees, damages and costs is **denied.**

A final order will be entered in accordance with this opinion.

DATED this 26th day of June, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiffs: | Barney James Reeves, William Anderson<br>Reeves, Chavez, Greenfield & Walker, P.A.<br>Las Cruces, New Mexico |
| Counsel for Defendant: | Victor Ortega, Carolyn Wolf<br>Montgomery & Andrews, P.A.<br>Santa Fe, New Mexico |
| | Andrew Loewi, David Chipman, Victoria Jacobs<br>Brownstein Hyatt & Farber, P.C.<br>Denver, Colorado |