IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOARD OF COUNTY COMMISSIONERS
OF GRANT COUNTY, NEW MEXICO
AND GRANT COUNTY, NEW MEXICO,

       Plaintiff,

vs.                                                                                                                                    No. CIV 98-1354 JC/LCS

QWEST CORPORATION,
A Colorado Corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant US West Communications, Inc. (QWest)'s Federal Rule of Civil Procedure 59(e) Motion to Amend Court's Final Order, filed July 11, 2000 *(Doc. 68)*.[1] After review of the motion, the memoranda and supplements submitted by the parties, and the relevant authorities, the court finds Defendant's motion well taken and will grant the motion.

### BACKGROUND

---

[1] Subsequent to US West's Motion to Amend, the caption of the case was changed to reflect the merger of US West Communications and Qwest Corporation. *See* Order, filed July 20, 2000 *(Doc. 71)*. Accordingly, while the motions and briefs refer to US West, the Court will refer to defendant as Qwest.

Upon cross motions for summary judgment, the court was asked to declare the validity of certain franchise ordinances.[2] By memorandum opinion and order, the court declared that Grant County Ord. No. 97-3-27-C § 7-8; County Ord. No. 97-3-27-B § 14, County Ord. No. 98-11-12 § 19; and the Application Form were preempted by the Federal Telecommunications Act. *See* Memorandum Opinion and Order, filed June 26, 2000 *(Doc. 66)*. Accordingly, the court dismissed this case on June 26, 2000. *See* Final Order, filed June 26, 2000 *(Doc. 67)*.

Presently before the court is Defendant US West Communications, Inc. (Qwest)'s Motion to Amend Court's Final Order, filed July 11, 2000 *(Doc. 68)*. Specifically, Qwest asks the court to expand its ruling to declare additional sections of the franchise ordinances preempted by the Federal Telecommunications Act of 1996 (FTA)[3] or to completely invalidate the franchise ordinances. Qwest further argues that Grant County has been delegated no power under state law to impose a rights of way fee (User Fee), regardless of its compliance with the FTA. Therefore, Qwest also asks the court to clarify the scope of authority conferred on Grant County to impose a fee for right of way use.

## ANALYSIS

I. <u>Preemption by the Federal Telecommunications Act</u>

Section 253 of the FTA sets forth restrictions on the authority of state and local governments to limit the ability of telecommunications companies to do business in local markets. *See* 47 U.S.C. § 253 (Supp.1998). For the reasons set forth in the Court's Memorandum Opinion and Order *(Doc.*

---

[2]The facts of this case are sufficiently detailed in the Court's Memorandum Opinion and Order, filed June 26, 2000 *(Doc. 66)* and need not be repeated here.

[3]Pub. L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. §151 *et. seq.* (Supp. 1998)).

*66)*, the court found that Grant County Ord. No. 97-3-27-C §§ 7-8; County Ord. No. 97-3-27-B § 14, County Ord. No. 98-11-12 § 19; and the Application Form "prohibit or have the effect of prohibiting" Qwest's ability to provide telecommunications services. *See* § 253 (a). The court further found that the Ordinances do not fall within the safe harbor provisions of §253(b) or (c) and were therefore preempted under the FTA. *See* § 253(b)(permitting competitively neutral regulations necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services and safeguard the rights of consumers) and §253(c)(permitting states or local governments to manage the public rights of way or to require fair and reasonable compensation for the use thereof). Qwest now asks that the court amend its final order to declare additional provisions of the ordinances prohibitive and therefore preempted by the FTA.

The court finds that the additional ordinances in this case include several features that, if not alone, certainly in combination have the effect of prohibiting the provision of telecommunications services under § 253(a). For example, the ordinances authorize substantial civil and criminal penalties for noncompliance with the application procedures.[4] *See AT&T Communications v. City of Austin*, 975 F. pp. 928, 939 (W.D. Tex. 1997)("The threat of criminal sanctions and fines for the failure of an entity to obtain municipal consent can only be described as prohibitory"). Likewise, the ordinances

---

[4]*See* Grant County Ord. 98-11-12 §23 (making fines, penalties and forfeitures cumulative), §25(imposing personal criminal penalties for ordinance violations), §26 (imposing forced divestiture of facilities to other providers or the County), §28(imposing forced removal of all facilities from rights of way) and §29(6)(imposing monetary penalties of $500 to $50,000 for violation of the ordinance); and Grant County Ord. 97-03-27B §15 (imposing personal criminal penalties for ordinance violations), § 16(requiring that each day of violation constitute a separate offense), and § 17(making fines, penalties and forfeitures cumulative). *See* Qwest's Brief in Support of its Motion to Amend at 5, filed July 2000 *(Doc. 69)*.

impose extensive reporting and service requirements that if not specifically met would result in termination of the franchise.[5] However, because only the regulations which do not fall under the safe harbor provisions of § 253 are preempted, the court must determine whether the regulations find refuge in either § 253(b) or (c).[6]

### A.     Safe Harbor under § 253(b)

Section 253(b) permits a state to impose requirements necessary to preserve and advance universal service, protect public safety and welfare, ensure the continued quality of telecommunications services, and protect the rights of customers. *See* 47 U.S.C. § 253(b). Local governments may only manage the rights of way, unless specifically delegated authority to impose requirements under §253(b). Because Grant County is a local authority, the court must first determine whether Grant County has been delegated any authority which would trigger §253 (b).

A county, being a political subdivision of the state, possesses only such powers as are expressly granted to it by the legislature, together with those necessarily implied to implement its express powers. *See El Dorado at Santa Fe, Inc. v. Board of County Comm'rs*, 89 N.M. 313, 317(1976); *Colfax County v. Angel Fire Corp.*, 115 N.M. 146, 149 (Ct. App.1993). In New Mexico,

---

[5] *See* Grant County Ord. No. 98-11-12 §§ 8(conditioning the use of the right-of-way on the grant of dedicated capacity for public access or County management of the right-of-way), 13(requiring grantee to provide the County with proof of performance test results required by the FCC, SCC or other federal and state regulations and requiring compliance with such regulations), 17(requiring grantee to comply with all customer service standards as set forth by local, state and federal law and requiring additional monitoring of customer complaints), and 18(requiring continuous service to paid subscribers).

[6] The court notes that taken together, the complex application procedures, approval requirements, extensive reporting requirements, discretionary clauses and penalties for non-compliance created the prohibitory nature of the ordinances. Thus, the safe harbor analysis which follows might be unnecessary in another case which addresses similar regulations which by themselves do not rise to the level of "prohibitory."

all counties are expressly granted the same powers that are granted municipalities, excepting those that are inconsistent with statutory or constitutional limitations placed on the counties. *See* NMSA 1978, § 4-37-1. These powers include the authority to make and publish any ordinance "necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants." *Id.*

Under the New Mexico Constitution, "the public regulation commission shall have responsibility for chartering and regulating business corporations in such a manner as the legislature shall provide." *See* NM Const. Art. XI, § 2. The authority of the New Mexico Public Regulations Commission includes regulatory power over telecommunications service providers. *See id.* Pursuant to that authority, the New Mexico legislature has vested the NMPRC with the task of establishing service rates, maintaining the availability of access to service, encouraging competition in the provision of public telecommunications services in order to regulate competition and ensure greater investment in the telecommunications infrastructure in the state, improved service quality and operations and lower prices for such services. *See* NMSA 1978, § 63-9A-2 (New Mexico Telecommunications Act). While not utilizing the exact language of NMSA 1978, § 4-37-1 and 47 U.S.C. § 253(b), clearly the legislature intends that the NMPRC regulate the quality of service and the rates charged to New Mexico customers of telecommunications service providers, as opposed to the physical management of the rights of way. For instance, the NMPRC has the authority to 1) fine telecommunications providers for any act or commission in violation of the rules and regulations of the NMPRC, *see* NMSA 1978, §63-7-23; 2) grant certificates of service that "the operation is in the present or future [a] public convenience and necessity," after review of a telecommunication service providers' financial adequacy, *see* NMSA 1978, 63-9A-6; and most importantly, 3) regulate

5

the rates and service agreements, assuring competitive rates and quality service. *See* NMSA 1978, § 63-9A-8.

Therefore, the court finds that the New Mexico legislature has implicitly preempted local governments' authority to regulate telecommunication service providers in the name of public safety and welfare by vesting the NMPRC with duties and authority to regulate in the public interest. Therefore, the ordinance provisions at issue in this case may not seek safe harbor protection under § 253 (b) of the Federal Telecommunications Act.

**B.     Safe Harbor under § 253 (c)**

Section 253(c) permits state and local governments to impose requirements necessary to manage the public rights of way or to require fair and reasonable compensation for the use thereof. *See* 47 U.S.C. § 253(c).  Although the NMPRC preempts Grant County's authority to regulate Qwest in the name of public safety and welfare, the court finds that the legislature's delegation of regulatory authority to the NMPRC does not similarly restrict a local government entity from instituting reasonable requirements necessary for the maintenance and management of the public rights of way. Therefore, the court will proceed to determine whether the disputed regulations in this case qualify for protection under §253(c).

In the only circuit which has thus far addressed the issue, the Ninth Circuit recently held that similar regulations did not qualify for the safe harbor provision in § 253(c). *City of Auburn v. Qwest Corporation,* 2001 WL 823718 at *17, July 10, 2001 (9th Cir.).  In *City of Auburn*, the Court reasoned that the franchise ordinance provisions acted to regulate the telecommunications companies themselves, as opposed to the right-of way. *See id.*  The court focused on four factors which proved

significant in their analysis. First, the Court found an extensive application process unrelated to the management of the rights of way. *See id.* Second, the Court found that the ordinances imposed reporting requirements or other controls not related to the management of the rights of way. *See id.* Third, the Court found that the ordinances required that franchise agreements contain certain conditions unrelated to management of the rights of way, and which instead concerned issues of rates, terms, and conditions of service. *See City of Auburn* at *18. Finally, the Court found the ordinances bestowed "unfettered discretion to insist on unspecified franchise terms, and to grant, deny, or revoke a franchise based on unknown factors. *See id.* Accordingly, the Court held that such ordinances were "too vague and too broad" to comply with § 253 (c). *See id. Accord TCG New York, Inc. v. City of White Plains,* 125 F. Supp. 2d 81, 92 (S.D.N.Y. 2000); *Bellsouth Communications v. City of Coral Springs*, 42 F. Supp. 2d, 1304, 1306 (S.D. Fla. 1999); and *Bell Atlantic v. Prince George's County*, 49 F. Supp.2d 805, 816 (D. Md 1999) *vacated and remanded on other grounds*, 212 F.3d 863 (4th Cir. 2000)(rejecting discretion to grant or deny a franchise based on whether the proposal would "serve and protect the public interest.")

### *1.     Grant County Ord. No. 98-11-12 §§ 8, 13, 17 and 18*

Qwest first moves the court to include in its decision the removal of Grant County Ord. No. 98-11-12 §§ 8, 13, 17 and 18. Qwest contends that these sections impose the same type of burdensome obligations rejected by this court in its Memorandum Opinion and Order *(Doc. 66)*. The court agrees that § 17 and 18 involve reporting requirements or other controls not related to the

management of the rights of way.  Instead, §§17 and 18  focus on quality of service and customer satisfaction.  However, the court is not entirely convinced that §§ 8 and 13, regarding access to maintain the rights of way, are not protected by § 253 (c).  The court will therefore allow §§ 8 and 13 to remain at this time.

### 2. *Grant County Ord. No. 98-11-12 § 16(2)*

Qwest also seeks to amend the final order to direct that Grant County's unfettered discretion over franchise applications and assignment and transfer decisions is improper.  The court specifically discussed the County's discretion to approve the initial application and found that "such broad regulation exceeds the authority of the County under 253(c)."  *See* Memorandum Opinion and Order at 11 *(Doc. 66)*.  Now, Grant County asks that the final order include Grant County Ord. No. 98-11-12 § 16(2) which seeks to regulate the transfer or acquisition of control of the franchise.  Like the information requested by the original application, the information requested by the regulation is beyond the scope of management of the rights of way.  Also, no specific criteria for analyzing the information is provided. Thus, the court finds that 98-11-12 § 16(2) involves exactly the kind of "unfettered discretion" rejected in *City of Auburn* and must be stricken.

### 3. *Grant County Ord. No. 98-11-12 §§ 23, 25, 26 and 28; Grant County Ord. No. 97-3-27(B) §§15, 16 and 17*

The court previously held that Grant County Ord. No. 97-3-27(B) §14 was preempted by the FTA because the regulation exceeded the authority of the County under §253(c).  *See* Memorandum Opinion and Order at 11,  filed June 26 *(Doc. 66)*.  Section 14 specifies ensuing penalties if proper application procedures are not met.  *See* Grant County Ord. No. 97-3-27(B) §14.  Qwest now argues

that additional enforcement provisions in the Ordinances are preempted by the FTA for the same reason.

Preemption of §14 was based on the court's finding that the underlying application requirements were beyond the scope of Grant County's authority because it did not relate to the physical use and occupation of the rights of way. Furthermore, the court concluded that excessive monetary sanctions, in amounts which could reach up to $50,000 per offense, do not "serve to protect the public safety and welfare" under § 253(b). *See* Memorandum Opinion and Order at 16 *(Doc. 66)*(without previously determining whether the County had been granted authority to regulate telecommunication service providers under the guise of public safety and welfare). However, it does not automatically follow that all enforcement provisions are preempted on their face. To determine whether each provision is lawful, the court must examine the nature of the penalty, and the wrong the penalty seeks to prevent or punish.

Review of the additional provisions reveals that Grant County Ord. No. 97-3-27(B) §§15, 16 and 17 refer to additional sanctions which could arise from failure to comply with the application procedures. Given that the court has previously determined the application to be an unlawful extension of Grant County authority, certainly any penalties for failure to comply with its procedures are prohibitory. Likewise, the court can find no reasonable relationship between the sanctions and Grant County's authority to manage the rights of way. While Grant County argues that the ordinances have no binding weight without penalties for failure to comply, this manner of control is not related to management of the rights of way and is therefore preempted. Accordingly, County Ord. No. 97-3-27(B) §§15, 16 and 17 are preempted by the FTA. Grant County Ord. No. 98-11-12

§§ 23, 25, 26, 28 and 29(a) also impose penalties for failure to comply with the Ordinances. For the reasons just stated, the court finds that these penalties also exceed the County's authority under § 253 (c).

## II. Severability

To determine whether invalid portions of the ordinances are severable, the court must refer to state law. *Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996). In New Mexico, it is well established that a part of a law may be invalid and the remainder valid, where 1) the invalid part may be separated from the other portions, without impairing the force and effect of the remaining parts, 2) if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and 3) when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid. *See Bradbury & Stamm Const. Co. v. Bureau of Revenue*, 70 N.M. 226, 230 (1962)(discussing the enforceability of a partially invalid statute).

In this case, the valid portions of the ordinances certainly lose their force and effect upon separation from their invalid brethren. Also, despite the severability clause, the court is hardly assured that the parties would have passed the remaining portions, given the number and variety of the provisions that are preempted by the Telecommunications Act. The court therefore finds that federal preemption has "render[ed] the end product a Swiss cheese regulation that would not be capable of accomplishing the ordinances' legislative purposes" and must therefore be entirely discarded. *See City of Auburn v. Qwest Corporation*, 2001 WL 823718 at *19 (quotation omitted).

## III. County Authority to Impose Fee

In its Memorandum Opinion and Order, the court declared § 7 and 8 of County Ord. No. 97-3-27-C preempted by the Federal Telecommunications Act and therefore an invalid exercise of the County's authority to regulate telecommunications services. *See* Memorandum Opinion and Order at 12, 15 *(Doc. 66)*. Because the court found initially that the ordinances were preempted by the FTA, the court determined that it was unnecessary to further examine the fee under state law. *See id*. at 13-14 *(Doc. 66)*. Faced with the court's directive to omit or amend the User Fee, the parties seek a declaration regarding the authority delegated to Grant County by the State to impose a user fee.[7] In support of their positions, the County argues that a franchise fee may be required for the use of the public rights of way. On the other hand, Qwest maintains that any franchise fee must comport with state law, regardless of whether the same fee would be permitted under federal law, and Qwest contends that under state law, the County is only allowed to recover actual expenditures made during the application process.

NMSA 1978 § 62-1-3 allows county commissioners to permit utilities and telecommunications providers to use public highways and streets. *See* NMSA 1978, § 62-1-3. Section 62-1-3 states that, "a board of commissioners is authorized to impose charges for reasonable actual expenses incurred in the granting of any franchise pursuant to this section." *See id.* Qwest submits that under the language of §62-1-3 the County's power to charge a fee is implicitly limited to reimbursement for expenses generated during the application process. Qwest argues that such expenses could include the publishing of the ordinance and the holding of a special election. *See* Atty. Gen. Op. page 4, n. 3. The court disagrees, however, with Qwest's conclusion that the User Fee in

---

[7]While the court has already determined that the Ordinances may not stand as written, the court's analysis on this issue will apply to similar future ordinances.

this case is therefore unlawful. As conceded by Qwest, the expenses referred to in § 62-1-3 are precisely the nature and extent of those covered by the Application Fee provided for in Ordinance No. 97-03-27(B). *See* Qwest's Brief in Support of its Motion for Summary Judgment at 21, filed December 14, 1999 *(Doc. 48)*. The Application Fee and the User Fee refer to different compensation, a matter which the Attorney General's Opinion understandably confused. Despite the lack of express authority under state law to receive compensation for use of the rights of way, § 253(c) clearly allows it under federal law. The court finds no other statutory reference to preclude the imposition of a separate User Fee so long as the User Fee imposed is a reflection of reasonable actual expenses incurred for managing the public rights of way.[8] *See* 47 U.S.C. § 253(c).

Therefore, the court finds that the County is not precluded by state law from imposing a User Fee for managing the rights of way. However, as stated in the previous opinion of this court, the amount of a User Fee must directly relate to the County's expenses incurred in managing the actual physical use of the public right of way. *See* Memorandum Opinion and Order at 12 *(Doc. 66)*. Moreover, a User Fee may not relate to a franchisee's revenue. *See id.* at 15. Inasmuch as the parties may seek further clarification of the court's definition of "fair and reasonable," the court declines such guidance at this time. Without sufficient knowledge of the operating expenses of the County, any further explanation by the court would be inappropriate.

---

[8]The court is also not persuaded by Qwest's argument that the New Mexico constitution implicitly limits the County's power to regulate businesses through the imposition of a User Fee by vesting such power with the NMPRC. *See* NM Const. Art XI, § 2 ("the public regulation commission [PRC] shall have the responsibility for chartering and regulating business corporations in such a manner as the legislature shall provide"). The County's leave to impose a User Fee under § 253(c) to manage the rights of way does not conflict with the power of the NMPRC to "regulate universal service, protect customers, ensure quality and protect the public safety and welfare." *Bell South Telecomms., Inc. v. City of Coral Springs*, 42 F. Supp.2d 1304, 1307 (S.D. Fla. 1999). For further discussion*, see supra, Section IA*.

Wherefore,

**IT IS HEREBY ORDERED** that:

1) Grant County Ordinance No. 97-3-27-C §§ 7-8; Grant County Ord. No. 97-3-27-B §§ 14, 15, 16, and 17; Grant County Ord. No. 98-11-12 §§ 8, 13, 16(2), 17, 18, 19, 23, 25, 26, 28, 29(6); and the Application Form are preempted by the Federal Telecommunications Act.

2) Safe harbor protection for the offending regulations is not available under 47 U.S.C. § 253(b).

3) Of the offending regulations, only Ord. No. 98-11-12 §§ 8 and 13 are protected by 47 U.S.C. §253 (c).

4) An attempt to sever the offending regulations would impair the force and effect of the permissible provisions. Therefore, the Ordinances are preempted in their entirety.

5) The County is not precluded from charging a User Fee that is directly related to the actual expenses incurred by the County in granting a franchise application. However, the Court declines to specify an amount without more information regarding the County's actual expenses.

An amended Final Order will be entered in accordance with this opinion.

DATED August 3, 2001.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Barney James Reeves, Esq.
    William R. Anderson, Esq.

       Reeves, Chavez, Greenfield & Walker, P.A.
       Las Cruces, New Mexico

Counsel for Defendants:

       Victor R. Ortega, Esq.
       Carolyn A. Wolf, Esq.
       Montgomery & Andrews, P.A.
       Santa Fe, New Mexico

       Andrew W. Loewi
       David S. Chipman
       A.E. Victoria Jacobs
       Brownstein Hyatt & Farber, P.C.
       Denver, Colorado